UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN C.,[1]<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,<br><br>　　　　Defendant. | Case No. 20-cv-04324-TSH<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 28 |

## I.   INTRODUCTION

Plaintiff Susan C. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. ECF No. 23. Defendant cross-moves to affirm. ECF No. 28. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

## II.   PROCEDURAL HISTORY

On July 6, 2016, Plaintiff filed an application for Social Security Disabled Widow Insurance benefits. AR 70, 189-90. The application was initially denied on October 7, 2016 and again on reconsideration on February 1, 2017. AR 101-05, 108-13. An Administrative Law Judge

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 11, 12.

1    ("ALJ") held a hearing on April 25, 2019 and issued an unfavorable decision on May 31, 2019.
2    AR 17-33, 40-68. The Appeals Council denied Plaintiff's request for review on May 5, 2020. AR
3    1-6. Plaintiff seeks review in this Court pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises two issues on appeal: (1) whether the ALJ gave legally sufficient reasons for rejecting the opinions of Dr. Wilson, her treating psychiatrist and (2) whether the ALJ failed to give specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (simplified). It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not

1    negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified).  But "[a] reviewing

2    court may not make independent findings based on the evidence before the ALJ to conclude that

3    the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492 (citations omitted).  The Court is

4    "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.  DISCUSSION

### A.  Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met.  *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.  20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since December 31, 2014, the alleged onset date.  AR 23.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

3

1  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

2  impairments: bradycardia, hypothyroidism, post-traumatic stress disorder, and bipolar disorder,

3  type II.  AR 23.

4  At step three, the ALJ evaluates whether the claimant has an impairment or combination of

5  impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

6  "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

7  describe impairments that are considered "to be severe enough to prevent an individual from doing

8  any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

9  medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

10  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

11  medical criteria.  An impairment that manifests only some of those criteria, no matter how

12  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (simplified).  If a

13  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

14  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

15  age, education, and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined

16  Plaintiff did not have an impairment or combination of impairments that meets or equals any of

17  the listings.  AR 24.

18  If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

19  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

20  despite their limitations, 20 C.F.R. § 404.1545(a)(1), and determines whether they are able to

21  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

22  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

23  it."  *Id.* § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can perform

24  past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ determined

25  Plaintiff has the RFC to:

27  > perform medium work as defined in 20 CFR 404.1567(c) except the claimant is capable of frequent climbing, stooping, handling, and fingering, but she cannot work with exposure to unprotected heights or heavy moving machinery.  She can maintain attention and

concentration for two-hour periods with normal breaks.

AR 26. Based on this RFC, the ALJ determined Plaintiff could perform her past relevant work as a laboratory assistant. AR 31-32.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.*

Here, although the ALJ already determined that Plaintiff was capable of performing her past relevant work, the ALJ also made an alternative step-five determination. AR 32. The ALJ determined, based on the testimony of a vocational expert, that Plaintiff could perform other jobs existing in significant numbers in the national economy, including hospital cleaner, industrial cleaner, and automobile detailer. AR 32-33. The ALJ noted that Plaintiff would still be able to

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* at 1114-15. "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.* at 1115 (citation omitted).

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citation omitted). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citation omitted).

1 perform those same jobs even if he included an additional limitation in Plaintiff's RFC that
2 Plaintiff could only perform simple, routine, repetitive tasks, which would essentially limit
3 Plaintiff to unskilled work. AR 33. Based on the ALJ's alternative step-four and step-five
4 findings, the ALJ concluded that Plaintiff is not disabled. *Id.*

**B.     Medical Opinions**

   **1.     Legal Standard[5]**

In the Ninth Circuit, courts distinguish among the opinions of three types of physicians: (1) treating physicians who have an established relationship with the claimant; (2) examining physicians who see the claimant but do not treat him or her; and (3) non-examining physicians who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. . . . [T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* at 830 (internal quotations and citations omitted).

Even where a treating or examining physician's opinion is contradicted by another physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that are supported by substantial evidence" in the record. *Garrison*, 759 F.3d at 1012 (internal quotations and citation omitted); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495

---

[5] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. *Id.* Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. § 404.1527 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. § 404.1520c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, the agency's final decision was issued after the effective date of the final rules (May 2019), but Plaintiff filed her claim before (July 2016). Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

1  F.3d 625, 633 (9th Cir. 2007)); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The

2  "substantial evidence" standard requires an ALJ to "set[ ] out a detailed and thorough summary of

3  the facts and conflicting clinical evidence, stat[e] his [or her] interpretation thereof, and mak[e]

4  findings." *Reddick*, 157 F.3d at 725 (citation omitted). Conclusory statements by the ALJ are

5  insufficient; he or she "must set forth his [or her] own interpretations and explain why they, rather

6  than the doctors', are correct." *Id.* (citation omitted). An ALJ errs if he or she "does not explicitly

7  reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion

8  over another[.]" *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th

9  Cir. 1996)).

### 2. Analysis

Plaintiff challenges the ALJ's assignment of "little weight" to the opinions of her treating psychiatrist, Dr. Wilson. Dr. Wilson completed a mental medical source statement about Plaintiff on February 19, 2019. AR 1081-86. Dr. Wilson stated that Plaintiff's first contact at Del Norte Mental Health was in June 2017 after she moved to California from Texas, where Plaintiff had electroconvulsive therapy at a psychiatric hospital before moving. AR 1081. Dr. Wilson said that she saw Plaintiff every six weeks. *Id.* Dr. Wilson diagnosed Plaintiff with bipolar affective disorder, type II and said that she receives moderate benefits from her medications, which help prevent recurrence of suicidal thoughts, but Plaintiff still struggles with severe depression. *Id.* Dr. Wilson noted clinical findings of feelings of worthlessness, helplessness, and hopelessness, poor concentration, difficulty with decision making, poor memory, depressed mood, confusion and overwhelming anxiety, mood swings with irritability, racing thoughts, and pressured speech. *Id.* Dr. Wilson's prognosis for Plaintiff was fair: Dr. Wilson opined that Plaintiff's medications were helping to prevent worsening of her symptoms but were unlikely to restore enough of Plaintiff's cognitive function for her to work in the future. *Id.* Dr. Wilson rated all of Plaintiff's work-related abilities as "[s]eriously limited," "[u]nable to meet competitive standards," or "[n]o useful ability to function," because her mood swings and profound depression impair her concentration, memory, and decision making. AR 1083-84. Dr. Wilson found that Plaintiff's impairments have lasted more than a year and would cause her to miss more than four days of work per month. AR

1085. According to Dr. Wilson, the earliest date that Plaintiff's symptoms and limitations applied was 1989. AR 1086.

The ALJ gave Dr. Wilson's opinions little weight for two reasons: (1) the "extreme limitations" opined by Dr. Wilson are inconsistent with Plaintiff's "wide range of activities of daily living and part-time work activity after the alleged onset date" and (2) "Dr. Wilson's estimated date of disability in 1989 is not supported by the claimant's own alleged onset date or her documented work history for several decades after this date." AR 29. The Court finds the first reason legally insufficient and the second reason sufficient only to discount Dr. Wilson's estimated date of disability, not her entire opinion.[6]

The ALJ's statement that Dr. Wilson's assessed limitations are inconsistent with Plaintiff's activities of daily living and part-time work activity is neither sufficiently specific nor supported by substantial evidence. *See Garrison*, 759 F.3d at 1012. The ALJ vastly overstates Plaintiff's activities of daily living by describing them as a "wide range." AR 29. The only activities of daily living identified by the ALJ are that Plaintiff cooks, cleans, drives, shops, walks some for exercise, sleeps regularly, and goes to church and grief counseling. AR 29. But the ALJ ignored the record evidence that Plaintiff cooks things that are easy, like frozen dinners, cereal, and ice cream, because she does not care about what she eats (AR 246), has a housekeeper who helps with the cleaning (AR 56-57), only shops when she has to, about once every three weeks, and even then, often brings a friend to help with her anxiety (AR 56-59), and only attends church once a week (AR 1371). The ALJ's decision provides no explanation for how these limited, occasional activities of daily living are inconsistent with Dr. Wilson's "extreme" work-related limitations, which were assessed in the context of a full-time mandatory work schedule, not the occasional, flexible schedule that Plaintiff's limited activities of daily living appear to follow. *See Garrison*, 759 F.3d at 1016 ("The critical differences between activities of daily living and activities in a

---

[6] The Court evaluates the ALJ's reasons for rejecting Dr. Wilson's opinions under the "specific and legitimate reasons that are supported by substantial evidence" standard, *Garrison*, 759 F.3d at 1012, because Dr. Wilson's opinions were contradicted by the opinions of the examining psychologist and the non-examining state-agency psychologists, who all assessed less severe limitations. AR 78, 92-96, 465-66.

8

full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer.  The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (alteration in original) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

Similarly, Plaintiff's testimony regarding her part-time work was that she worked six to eight hours per week and received help from friends and family members when she was suffering from severe depressive episodes.  AR 49-53, 465.  The ALJ's decision offers no explanation for how this part-time, assisted work activity is inconsistent with Dr. Wilson's limitations which, again, were assessed in the context of a full-time, mandatory work schedule.

As for Dr. Wilson's estimated date of disability, the Court finds that the inconsistency between this estimate and Plaintiff's alleged onset date and work history is sufficiently specific and legitimate to discount Dr. Wilson's estimated date of disability.  *See* AR 29, 217-18.  But neither the ALJ nor the Commissioner have provided any argument to support discounting the entirety of Dr. Wilson's opinions based on this one discrepancy.  *See* AR 29; Def.'s Mot. at 5 ("[T]he ALJ properly discounted Dr. Wilson's opinion *as to the onset date of Plaintiff's symptoms*.") (emphasis added).  Accordingly, the Court finds the ALJ was justified in discounting Dr. Wilson's estimated date of disability but erred in not providing specific and legitimate reasons supported by substantial evidence for rejecting the rest of Dr. Wilson's opinions.  Remand is therefore warranted.

**C.     Plaintiff's Testimony**

At her hearing, Plaintiff testified that she worked on a part-time, intermittent basis managing a vacation rental from 2015 until April 2017.  AR 47-49, 53.  She took reservations, kept the books, managed a housekeeper, and performed customer service over the phone.  AR 49.  She testified that on one or two instances she became so depressed that her husband had to take over for her, answer the phone for her, and help her with the books.  AR 49-50.  After her husband died in January 2016, she became extremely depressed and her pastor, stepdaughter, and friend took over much of the job for her, although she was still doing some work and was still paid until

April 2017.  AR 50-52.  Prior to managing the vacation rental, Plaintiff worked in her husband's lab polishing his slides.  AR 52.

In February 2017, approximately one year after Plaintiff's husband died, she was hospitalized in a mental hospital and underwent electroconvulsive therapy to treat her severe depression.  AR 51, 53.  The electroconvulsive therapy did not help but a few months after the treatment, around June or July of 2017, her medications were changed and she did get some relief from her severe depression.  AR 54.  Plaintiff explained that her depression did not follow a specific pattern, but it was somewhat cyclical in that it comes and goes.  AR 54-55.  After her depression improved to a mild or moderate level in June or July 2017, she then became depressed again in the fall of 2017.  AR 54.  Plaintiff testified that, as of the hearing, her depression had been moderate to severe for a few months.  AR 55.

Between her electroconvulsive therapy treatments in 2017 and the hearing, Plaintiff said there was never a period when she could have worked full-time.  AR 55.  When her depression is severe, it is a daily issue that causes her stress and anxiety, makes her cry a lot, and causes her to have nightmares, flashbacks, and suicidal ideation.  AR 55, 57.  Because of these symptoms, she tries to avoid going places and doing things.  AR 56.  When she is depressed, going to the store gives her a lot of anxiety and can cause her to cry, so she brings a friend and only goes grocery shopping once every three weeks.  AR 56-59.  She has trouble starting and finishing things around the house and has a big pile of paperwork that she has to deal with, including bills she needs to pay.  AR 56.  Because of her depression, a housekeeper helps her with changing the sheets on her bed, vacuuming, dusting, and cleaning the bathrooms.  AR 56.  Plaintiff has tremors that are generally well-controlled, but when her anxiety is high, it makes her tremors worse and can interfere with her writing.  AR 59-61.

### 1.     Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective [symptoms], an ALJ must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). And second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she [or he] gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "At the same time, the ALJ is not required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (internal quotations and citation omitted). Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).

In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (internal quotations and citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2016 WL 1119029, at *7.

**2.  Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." AR 28. The ALJ did not find any affirmative evidence of malingering and was therefore required to provide "specific, clear and convincing" reasons for not fully crediting Plaintiff's testimony. *Vasquez*, 572 F.3d at 591.

11

The ALJ provided three reasons for discounting Plaintiff's testimony: (1) Plaintiff worked part-time as a vacation rental manager from 2015 to 2017; (2) Plaintiff's other daily activities "exhibited . . . work-related activities and abilities"; and (3) Plaintiff's treatment record showed that her symptoms improved after she began mental health treatment. AR 28-29. None of these reasons, taken alone or in combination, is sufficient to meet the "specific, clear and convincing" standard.

First, as discussed above, the fact that Plaintiff worked six to eight hours per week, with assistance from friends and family members when her depression was severe, does not show that Plaintiff is capable of a full-time, mandatory work schedule. AR 29, 49-53, 465; *Garrison*, 759 F.3d at 1016. In addition, the ALJ did not specify which parts of Plaintiff's testimony were inconsistent with her part-time work. AR 29; *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted). In fact, Plaintiff's testimony that she tried to do this work when she was able, but needed assistance when her depression was severe, is completely consistent with her testimony that her depression is cyclical and when it is severe it prevents her from doing most things. *See* AR 49-57.

Second, as also discussed above, the limited and occasional daily activities cited by the ALJ do not show that Plaintiff is capable of a full-time, mandatory work schedule and are not a specific, clear, and convincing reason to discount Plaintiff's testimony. AR 29; *Garrison*, 759 F.3d at 1016. As with the ALJ's discounting of Dr. Wilson's opinions, the ALJ once again ignored record evidence regarding the limited nature of Plaintiff's daily activities and did not explain which portions of Plaintiff's testimony were contradicted by which daily activities. *See* AR 29, 56-59, 246, 1371; *Burrell*, 775 F.3d at 1138 (finding error where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original). Taking this record evidence into account, Plaintiff's daily activities are consistent with her testimony that her depression is cyclical and when it is severe, it prevents her from doing most things. AR 29, 54-59, 246, 1371.

Third, the ALJ discounted Plaintiff's testimony because he found that Plaintiff's symptoms

12

improved after she began mental health treatment. AR 27-29. This is somewhat true, in that Plaintiff's symptoms do appear to have improved as compared to when she was hospitalized in February 2017. *See, e.g.*, AR 661 (6/13/2017: "Rates depression prior to [electroconvulsive therapy and medication change] treatments as an 8-9, currently is able to rate it at a 4.") (capitalization removed), 1410 (4/9/2018: "[S]he has not had S[uicidal] I[deation] since the hospitalization.") But the fact that Plaintiff's symptoms have improved from a time when she was hospitalized in a mental hospital for two weeks with active suicidal ideation and given electroconvulsive therapy does not mean that she has improved enough to maintain a full-time mandatory work schedule. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work."). Nor is the fact that Plaintiff's symptoms improved since the time of her February 2017 hospitalization inconsistent with Plaintiff's testimony.

      Plaintiff testified that her depression improved in June or July of 2017, a few months after she underwent electroconvulsive therapy and her medications were changed. AR 54. But she also testified that her depression was seasonal and cyclical and that she became depressed again in the fall of 2017. AR 54-55. This testimony is consistent with the record and the record does not contain substantial evidence to support the ALJ's implicit conclusion that Plaintiff has seen *steady* improvement in her mental health since 2017. The ALJ cited a handful of records that referenced improvements in Plaintiff's symptoms (*see* AR 27-29) but viewing the record as a whole shows those improvements were temporary, and that at other times Plaintiff's symptoms worsened. *See, e.g.*, AR 624 (9/25/2017: "Usual pattern i[s] predominantly depressed with occasional day of euthymia."), 1421 (11/6/2017: "Notices progressively more intense depression in past 3-4 weeks. Has every winter."), 1400 (1/28/2019: "[R]eports an increase in dep[resse]d mood, anergia, amotivation, isolativeness, feelings of hopelessness and worthlessness."), 1396 (3/18/2019: "[R]eports an increase of depression which started worsening a few months ago."). These cherry-picked examples of improvement are not sufficient to discount Plaintiff's testimony. *See Holohan*

13

*v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("We conclude that the ALJ's specific reason for rejecting Dr. Hsieh's medical opinion is not supported by substantial evidence. In concluding that the most recent medical evidence indicates that Holohan was improving, the ALJ selectively relied on some entries in Holohan's records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment."); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citation omitted).

In conjunction with his finding that Plaintiff's symptoms had improved with mental health treatment, the ALJ also asserted that Plaintiff received "conservative" and "limited" treatment after 2017. AR 29. This claim is insufficient to discount Plaintiff's testimony, however, as the ALJ did not identify what more aggressive treatments were available and appropriate. *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]n ALJ errs in relying on conservative treatment if the record does not reflect that more aggressive treatment options are appropriate or available.") (internal quotations and citation omitted). Indeed, Plaintiff has been attending regularly scheduled therapy sessions and taking six different psychiatric medications, and it is unclear what additional treatment the ALJ believed would be necessary in order to credit Plaintiff's testimony. *See* AR 1394, 1396, 1398, 1400, 1402, 1404, 1406, 1408, 1410, 1413, 1416, 1419, 1428, 1434.[7]

In sum, Plaintiff's testimony that she suffers from cyclical, seasonal depression that, when severe, prevents her from doing most things, appears to be entirely consistent with the record and the ALJ did not provide any specific, clear, and convincing reasons supported by substantial evidence for discounting that testimony. Remand is therefore warranted on this basis as well.

---

[7] The ALJ also failed to provide substantial evidence to support his seemingly stray remark that Plaintiff's severe symptoms did not last more than a 12-month period. AR 29. The only specific medical record cited by the ALJ in support of this statement says that Plaintiff's depressive symptoms were "severe especially in 2016 after h[u]sband died" and that her depressed mood had improved since her medications were changed in approximately May 2017. AR 1384. Plaintiff's husband died in January 2016, AR 50, more than 12 months prior to Plaintiff's medication change, which contradicts the ALJ's conclusion that Plaintiff's severe symptoms did not last more than 12 months.

**D. Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits under the credit-as-true doctrine. "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). However, under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (simplified). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101).

It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Id.* at 1047. Further, even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* at 1045 (citing *Treichler*, 775 F.3d at 1101). While all three credit-as-true factors may be met, the record as a whole could still leave doubts as to whether the claimant is actually disabled. *Trevizo v. Berryhill*, 871 F.3d 664, 683 n.11 (9th Cir. 2017) (citation omitted). In such instances, remand for further development of the record is warranted. *Id.*

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: October 5, 2021

THOMAS S. HIXSON
United States Magistrate Judge